## Case No. 8,246a.

### LENOX v. LENOX.

[1 Hayw. & H. 11.] [1]

Orphans' Court, District of Columbia. Jan. 16, 1841.

WILLS — LEGACY VESTED — DEATH OF LEGATEE—LAPSE.

1. Where in a will a desire is expressed that a legatee should pursue his studies and receive the best education the country could afford, and the expense of the same should be chargeable to the estate, until he should arrive at the age of 21 and be entitled to his proportion, and during the period between his arrival at the age of 21, and the division and the distribution of the estate, he be allowed a sum sufficient for his prudent support, to be after deducted from his proportion, it was held that the testator intended that the proportion of such legatee should become vested at the death of the testator, payable at a future day.

2. When such legatee died before the time appointed for the distribution of the estate, leaving a last will and testament by which he bequeathed to his widow the proportion he would have received if he had lived until the time of the distribution, it was held that the legacy to the husband did not lapse, and that the widow was entitled to it.

The petitioner [Mary L. F. Lenox.] was the widow of William A. Lenox, who died, leaving a last will and testament, in which he bequeathed to her all of the personal estate left to him under the will of his father, Peter Lenox. She claims that she is entitled to receive under her husband's will the share her husband would have received as one of the distributees under his father's will. The other legatees under the will of Peter Lenox

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

filed a caveat claiming they were the sole legal heirs and distributees of the deceased William A. Lenox, and claiming the whole of the residue of the estate of Peter Lenox, now in the hands of the executors of the said Peter.

The substance of the will of Peter Lenox will appear in the opinion.

Joseph H. Bradley, for petitioner.
Brent & Brent, for caveators.

The case was argued by the counsel on both sides before the judge of the orphans' court, NATHANIEL P. CAUSIN, and EDWARD N. ROACH, Register of Wills.

THE JUDGE. In this case the executors of Peter Lenox, being ordered by the court to make distribution of his estate under the will, the widow of William claims to be entitled, under the will of her husband, to his proportion of his father's estate. It is contended by the executors of Peter Lenox that as the said William died before the time appointed in the will for the distribution of said estate. the legacy to him lapsed, and was not transmissible to his representatives, and that therefore her claim is null and void.

Courts of equity (and courts of law also) will always construe wills agreeably to the intention of the testator, if such intention be not contrary to and inconsistent with the rules of law. The intention of the testator is to be derived from the words used in the will; and in the construction of ambiguous expressions, we are told that the situation of the parties may very properly be taken in view; the ties which connect the testator with his legatees; the affection subsisting between them; the motives which may reasonably be supposed to operate with him, and influence him in the disposition of his property; are all entitled to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them. Throughout the will a disposition is evinced to secure for testator's family a liberal support. The legatee in question was his eldest son; a desire is expressed in the will that he and testator's other son, Walter, should pursue their classical and other studies, and receive the best collegiate education that the country could afford, and that the expense of the same, together with their maintenance, should be chargeable to the estate until they should, respectively, arrive at the age of twenty-one, and be entitled to their separate proportions thereof, and, during the period between their arriving at the age of twenty-one, respectively, and the division and distribution of the estate, they should be allowed therefrom a sum sufficient for their prudent support, to be afterwards deducted from their separate proportions. Could stronger language be used to convey the idea that the testator intended the gift as debitum in praesenti, solvendum in futuro? If, as is argued, the legacy lapsed in consequence of the death

of the said William before the time named for the distribution, how could the amount which was to be allowed him, if over twenty-one at his death, for a support after coming of age, and before the distribution, be deducted from his separate proportion? If the legacy lapsed, his representatives at the distribution were entitled to nothing. What then would be the situation in which the executors would find themselves if, as we will suppose, some five or six years had elapsed after the said William arrived at twenty-one, before his death, under the will, the time not having arrived for distribution, the executors were bound to allow a sum sufficient for his prudent support, and an intimation is given them that if he died before distribution, the legacy will lapse—his representatives will be entitled to nothing? From what fund then is to be deducted the amount paid should such an event occur? To whom are the executors to look for this sum? Might they not hesitate to comply with the directions of the will—could the testator, judging from the whole tenor of the will, so strongly manifesting in every part a desire to look after the comfort and promote the welfare of each and every member of his family, have intended thus to deal with his child and executors? By no means; a fund is named of which the amount is to be deducted; out of this, and this only, it can be taken. There is no such fund unless each child has a separate proportion; he could not have a separate proportion if the legacy lapsed; therefore it was not the intention of the testator that it should fail, but that it should vest at his death, to be reduced into possession at a future time mentioned in the will. Again, the testator gives and bequeaths all his stocks, whether bank, insurance or corporation, to his aforesaid children, share and share alike, but no distribution shall be made until the youngest child shall be of age; or, in other words, that he intends that each and every child named in his will shall be entitled at his death to his proportion of said stock, the possession, however, not to be enjoyed until the time specified; such further appears to have been the intention of the testator from the fact of his not having inserted in the will words (and it is usual when such an intent exists to make it known by language clear and not liable to misconstruction) going to show that only those would be entitled who should be in esse at the time named for the distribution, as for instance: "I give and bequeath all my stock, &c., not to my aforesaid children, but to such of them as shall be living when the distribution takes place." The intention then would clearly seem to favor the claim of the representative of the legatee. It remains to ascertain whether that intention is contrary to or inconsistent with the rules of law.

If the bequest is made payable at a future period, the question arises whether it is contingent and depending upon the event of the legatee being in existence at the time, or whether, in case of his previous death, the right to it is so vested in him as to be transmissible to his representatives. All the authorities to which reference has been had agree that the time being annexed to the substance of the gift as a legacy, "if" or "when" one shall attain twenty-one, it will not vest before that contingency happen, this is a condition annexed to the legacy and the legatee is entitled only upon the fullfilment of the condition, but if the time is annexed to the payment, if complete words of gift direct the executors to pay, the other words only fix the time of such payment, then the legacy vests, and is transmissible as a legacy to be paid at twenty-one. This I conceive to be the case in the present instance; the legacy vested at the testator's death, not to be reduced into possession, however, until the time specified for the distribution to take place, and not being contingent, but vested, the legatee having died before distribution, his representative is entitled to the amount which he would have received had he not died before the happening of that event. In 3 Durn. & E. 41, one Michael Lea devised certain premises to Thomas Lea and Edward Johnson, and their heirs and assigns, to hold to them and their heirs until Michael Lea, second son of his nephew Thomas, then about thirteen, should attain the age of twenty-four, on condition that they should, out of the rents and profits during that time, keep the building in repair; he then devised to Michael Lea, his great-nephew, when and so soon as he should attain the age of twenty-four, the premises in question. Said Michael Lea attained the age of twenty-one, but died under twenty-four, intestate, leaving Thomas Lea, the defendant, his brother, heir-at-law. It was contended that the words "when" and "so soon as," operated as a condition precedent to Michael Lea taking any interest under the devise, and the event of his attaining the age of twenty-four not having happened, the condition was defeated, and consequently his heir-at-law could take nothing. That the words had the same meaning as "if said Lea shall attain, &c.," and "if" was expressly determined to raise a condition precedent. The only question is whether, in the event of Michael Lea dying before he attained the age of twenty-four, this was a vested interest in him descendible to his heir-at-law, and consequently whether a title is derived to the defendant who claimed under him. I conceive that there can be no doubt on this question. It has been argued that it depended on a condition precedent, and that not having happened, that the estate never vested in Michael Lee, and certainly the consequence contended for would follow if this were a condition precedent. The only case cited in support of it is that of Brownsend v. Edwards, but it must be remembered that the words there are very different from the present—there it was, "if he should attain the

age of twenty-one." But the words in this case only denote the time when the beneficial interest was to accrue. But the question does not depend on argument merely. It has been settled ever since the time of Lord Coke —the first case on this subject is in 3 Coke, 19 (Boraston's Case), in which the words were, "when my son shall attain the age of twenty-one." There the court held the remainder was executed in the son immediately after the death of the testator, and that it did not rest in contingency, and that the words "when" and "then" only denote the time when the remainder shall take effect in possession, for when these adverbs refer to a thing which must of necessity happen, then they make no contingency. The same doctrine is found in the case of Mansfield v. Dugard, 1 Eq. Cas. Abr. 195. The last case on the subject is Goodtitle v. Whitby, 1 Burrows, 228. That was a devise to trustees to lay out the rents and profits of the devised premises for the maintenance, education, bringing up, and putting forth into the world of Thomas and John Hayward, sons of the testator's sister, during their minority, and when and as they should respectively attain the age of twenty-one, then to the use of the said sons of his sister and their heirs equally. The testator made the two trustees his executors. One of the testator's nephews died under the age of twenty-one, and the question was whether, as he did not live till the time when the estate was to come into possession, it was a vested remainder. The court, after argument, decided that it was, and Lord Mansfield recognized Boraston's Case and the case of Mansfield v. Dugard, supra, adding that these words could not operate as a condition precedent, but as giving an absolute interest in the fee, and denoting the time when the remainder was to take effect in possession.

Justice Ashhurst, in this case, comes to the same conclusion; he remarks further, "this is like the case of a legacy to be paid when the party attains the age of twenty-one—that is a vested legacy." Justice Goore further remarks, that this construction is consonant to the testator's intention, for otherwise, had Michael Lea left any issue they would not have taken anything under the will; it was doubtless the testator's intention that Michael Lea and his children should take the whole.

Thus it will be seen what construction has been placed upon the words "until when" and "so soon as," in the preceding cases. It has been decided, that in gifts of personal estate, or legacies, it is the same. Here I conceive that complete words of gift directed the executors to pay—"I give and bequeath all my stocks of every description, whether bank, insurance or corporation, to my aforesaid children, share and share alike, but no distribution shall be made until the youngest child shall be of age;" in other words, to vest at the death of the testator, to take effect in

possession when the youngest child should come of age,—not to vest in contingency, to be enjoyed by those and those only who should be living at the appointed time for distribution. In view of all the circumstances, equity, not unaccompanied, but calling to her support the decisions in courts at law, would seem to favor the claim of the widow of said William, and declare, as the decision of this court, that the legacy did not lapse by his death, but vested in him on the death of the testator, and that his wife is entitled, under his will, to the proportion he would have received had he lived till the time of distribution, or, in other words, the legacy of William Lenox did not elapse, but vested at the death of the testator, and was therefore transmissible.

An appeal was taken to the circuit court, but the appeal was not prosecuted.